**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KYLE BENNETT, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ICF TECHNOLOGY, INC., ACCRETIVE TECHNOLOGY GROUP, INC.,<br><br>Defendants. | Case No. 26-cv-13450<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Pursuant to Rule 23, Plaintiff Kyle Bennett ("Plaintiff") brings this wage and hour Class Action Complaint under Illinois state law on behalf of himself and all other similarly situated Performers who provide online adult streaming for Defendants ICF Technology, Inc. ("ICF") and/or Accretive Technology Group, Inc. ("ATG") (collectively "Defendants").

## NATURE OF THE ACTION

1. Defendants have misclassified their Performers, including Plaintiff, as "independent contractors" when they are, in fact, employees under Illinois law. Defendants have improperly withheld Plaintiff and putative Class Members' gratuities and failed to pay them for all hours worked. Accordingly, Plaintiff brings this Rule 23 class action for violations under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* ("IWPCA") to recover 100% of their tips, and the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1, *et seq.* ("IMWL") to recover unpaid wages (both for all hours worked, i.e. straight time in the free chat and for overtime, where applicable). *See* "Wage Class" defined below.

2. The IWPCA states that gratuities are the property of employees, and that their employers cannot retain them. Under the IWPCA, aggrieved employees shall be entitled to recover

their unpaid wages, 5% of the amount of the underpayment for each month that the underpayment remains unpaid, plus attorneys' fees and costs. The ten-year statute of limitations for the IWCPA applies to the unpaid tip claim brought by Plaintiff on behalf of himself and the putative Rule 23 "Tip Class" defined below.

3. Plaintiff further alleges that Defendants have subjected him and the putative Class members to improper pay practices by compensating them only for "paid chats" but not for all hours worked, including "free chat" sessions when they are performing to attract customers for a "paid chat." In essence, the Performers are only paid for a part of the show. Defendants track those paid minutes online and the total minutes online. This case is primed for class certification based on Defendants' own records.

4. Under the IMWL, aggrieved employees shall be entitled to recover (i) unpaid wages, (ii) treble the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, ***and*** (iii) damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. The three-year statute of limitations for the IMWL applies to the straight time and overtime wage claims.

## PARTIES

5. Plaintiff Kyle Bennett resides in Plainfield, Illinois. Plaintiff has been a performer for ICF since January 2024.

6. ICF is a Washington state corporation with a principal place of business at 800 Stewart Street, Seattle, Washington 98101. ICF operates a number of online social media platforms such as "Streamate" that shares adult content on websites such as streamate.com. The domain streamate.com is held by ICF.

7. ATG is a Washington state corporation with a principal place of business at 800 Stewart Street, Seattle, Washington 98101. This is the same address as ICF. ATG owns more than 10% of ICF's stock. According to ATG's website, it "is an established, fast-paced web company based in the heart of Seattle searching for world class talent for a variety of tech based careers. ***We are a market leader in web-based live video streaming***."[1] The IP address associated with www.streamate.com is registered to Accretive Networks, a d/b/a of ATG.

8. Defendants misclassify their Performers[2] who provide live adult performances to their customers as independent contractors. Defendants are and, at all relevant times, have been joint employers of Plaintiff and the Class members under Illinois law. Further, Defendants' operations are sufficiently interrelated.

9. Defendants' operations are interrelated and unified, they share common management, centralized control of labor relations, common ownership, common control, common website, common business purposes, and interrelated business goals. In addition, they jointly determine and manage the pay practices, rates of employee pay and method of payment, maintenance of employee records and personnel policies, practices and decisions with respect to the employees.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over Defendants because they are the employers here under Illinois law. During the respective class periods, Defendants have employed over 40

---

[1] https://atg.applytojob.com/apply/ (last visited Oct. 27, 2026) (emphasis added).

[2] "Performer" is a term utilized by ICF in its standard, uniform Agreement with Plaintiff and the putative Class members who are webcam performers who provide adult content on the internet.

performers in Illinois who stream for Defendants.[3] Critically, while broadcast throughout the world, the performance and streaming occur in Illinois.

11. This Court has subject matter jurisdiction under the Class Action Fairness Act (28 U.S.C. § 1332(d)), because the CAFA diversity of citizenship requirement is met, and the amount in controversy exceeds $5,000,000, excluding interest and costs.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

### <u>Streamate Website</u>

13. Defendants operate a streaming website under the name Streamate.com (hereinafter "Streamate"). Streamate is in the business of providing live, simulcast adult entertainment to its customers, as depicted in the image below:




14. In or about January 2024, Plaintiff registered online with Streamate, executed an

---

[3] https://www.streamatemodels.com/ (last visited Oct. 27, 2026) (promoting 4,000 websites with "millions of visitors"). The Class members are not just female. According to ICF, "Webcam models come in all sizes, sexes, ethnicities, and orientations. Couples and groups are welcome too." *Id.*

Agreement with ICF, and thereafter began streaming live performances for Streamate.

15. Prior to signing the Agreement and registering with Streamate, Plaintiff, along with all other Performers, submitted application materials to be reviewed by Streamate.

16. Streamate explains its services:

> At Streamate, you can chat with amateur performers while watching them live on camera. We have performers of every type! Search for any keyword or browse through our categories to find what you're looking for. You can interact with performers and create a unique experience just for you.
>
> If you see a performer you like, tap on the image to visit their profile and read more about them. If they're online and available, you'll see their free, live video and can start a conversation! You won't be charged unless you join a paid chat session. The per-minute prices for paid chats are listed in your local currency before you enter the chat. Your Streamate membership is free, and there is no monthly or recurring fee to view the site.[4]

17. Streamate explains how Performers make money:

> When you start streaming, you'll be in free chat mode. Members can enter your room, chat, and see your video. If they take you into one of the types of paid chat, non-paying customers can't see what's going on. When the paid show ends, you'll go back to free chat.
>
> Members may show extra appreciation by giving you a one-time payment of "Gold." These bonus amounts are usually small, but can add up! They can be given in both free chat or paid chat.
>
> You'll get a set percentage of all the money spent in your room. The more time you spent in paid chat and the more Gold you get, the more you'll make each week![5]

18. On Streamate, thumbnails of the Performers are visible, and customers choose which Performer's stream they join.

---

[4] https://streamate.com/support/faq (last visited Oct. 27, 2026).

[5] https://www.streamatemodels.com/ (last visited Oct. 27, 2026).

19. Like other adult entertainment streaming services, customers join a live stream to watch the Performers and interact in a "free chat." The "free chats" are more generally accessible, and Defendants severely limit the activity a Performer may engage in while in a "free chat."

20. From there, the Performer may engage with a person for continued viewing in a "paid chat."

21. Plaintiff and the Class members are not compensated for their time outside of the "paid chat."

22. Defendants track both "total minutes online" and "total paid minutes online" for Plaintiff and each Class member.

**<u>Defendants Exert Control Over the Performers</u>**

23. While the Performer is the one attempting to entice the customers to pay, ICF exhibits significant control over the manner in which they do so by way of written rules in the Agreement it requires all Performers to sign and follow.

24. The standard Agreements between the Performers and ICF, including the one signed by Plaintiff, provide rules on what the Performers may and may not do during a stream.

25. By way of example but not limitation, Performers are prohibited from involving alcohol in a performance and displaying "below the waist" nudity in so called "free areas."

26. Defendants permit their customers a free look at the Performers in paid chat for the first 30 seconds – regardless of how the Performers feel about working for free.

27. Additionally, notwithstanding the explicit nature of Defendants' business, Performers are prohibited from engaging in any activity that is "inappropriate," which is solely determined by ICF. ICF has full control in determining what is and what is not allowed while a Performer is streaming and performing both inside and outside of "paid chats." This is a subjective

determination by ICF, and is made in their sole discretion.

28. Defendants also have full control over the visibility of the Performers' streams. In other words, Defendants are able to control in their sole discretion whether a Performer appears on the first page of the Streamate website or, for example, the tenth. By controlling how visible a Performer's stream is, Defendants in essence control viewership, and therefore the amount Performers are able to earn.

29. Defendants are also able to limit the ability of Performers to stream for reasons not related to the Agreement.

30. Pursuant to a uniform Agreement with its Performers, ICF also requires that the images submitted by Performers to their website biographies be approved by ICF.

31. Pursuant to a uniform Agreement with its Performers, ICF collects and captures biometric data from Plaintiff and the Class members.

32. Pursuant to a uniform Agreement with its Performers, ICF uses the images and videos of Plaintiff and the Class members for Artificial Intelligence, including machine learning, "to train" and "to detect . . . if a room is empty."

33. Pursuant to a uniform Agreement with its Performers, ICF restricts Plaintiffs and the Class members from promoting on any non-Streamate related websites, including Performers' personal social media accounts.

34. Pursuant to a uniform Agreement with its Performers, ICF may terminate the Agreement in its "complete sole discretion for any reason whatsoever . . . ."

35. ICF tells the Performers what equipment can be used for their webcamming,

including a computer, a webcam and an internet connection.[6]

36. Performers must purchase this equipment for their work on streamate.com on their own and are not reimbursed by Defendants.

37. Despite ICF having the final say as to what Performers can and cannot do while streaming, Plaintiff's compensation is directly related, and wholly dependent, on his performance.

38. Performers are only compensated for a fraction of the time in which they are working.

39. Plaintiff and the putative Class members can receive tips, called "Gold"[7] on Streamate, but Streamate retains 65% of the "Gold" earned by Plaintiff and the Class members.

40. Besides Defendants' "proprietary web interface" for Streamate itself, Performers are also dependent on the privacy and other "Systems" Defendants spent a decade building that are designed to prevent fraud and illegal activity. The fraud prevention and privacy protection Systems are also unavailable to Performers once their working relationship is terminated.

41. According to the common Performer Agreement, Defendants collect biometric data on Performers; monitor Streamate customer "sentiment" "such as emoji heart eyes and eggplant"; and "analyze this data to determine . . . the optimal order in which to present performers and to find performers like a given performer, and we use characteristics we can derive to make the site more useful and successful. This data may be additionally used to analyze how to advise Performers in ways to improve their Content, pricing, performance, scheduling, etc." Defendants

---

[6] https://www.streamatemodels.com/ (last visited Oct. 27, 2026) ("You can start streaming with almost any modern computer running Windows or Mac OS! For the best video experience, we recommend a computer running an i7 processor (or equivalent) and at least 3 GB of RAM."); *id.* ("Any webcam will work, including a built-in laptop camera. To help you earn more attention, we recommend a widescreen webcam with HD quality video."); *id.* ("Any internet connection will get you started, but faster connections will ensure a better experience and higher quality video.").
[7] Each unit of "Gold" earned by Plaintiff is equivalent to one U.S. Dollar.

"may use [Performers] images and videos for Artificial Intelligence . . . ." *Id.*

**Defendants' Unlawful Payment Practices**

42. Performers, including Plaintiff, begin their work by removing above-the-waist clothing or putting on a costume or other adult attire for webcamming, setting up their equipment, logging into Streamate, and then starting a stream. This is a benefit to Defendants. Defendants do not compensate Plaintiff or the Performers for this time.

43. Upon beginning his "stream," Plaintiff turns on his camera and attempts to entice customers to join his private stream. Despite this being the period where Plaintiff is exerting the most energy and effort in his performance, that is, performing potentially explicit acts in order to entice customers to join a "paid chat," Plaintiff is ***not*** compensated for this time.

44. Customers can view a preview of his stream, but join the private stream by clicking "Go Private" and paying per minute:




45. Performers' compensation begins after, ***and only after***, a customer joins the private stream and the customers submit the first payment.

46. As a result of Defendants' payment practices, Performers are only compensated for

a fraction of the work hours they provide to Defendants.

47. Performers are not paid at all for the majority of their performance, much less compensated at the applicable minimum wage rate.

48. Due to Defendants' pay practices, Performers do not receive minimum wage for all hours worked as required by Illinois law.

49. In addition, Defendants profit off their employees by maintaining control over their intellectual property.

50. Defendants track and monitor when Plaintiff is online, with metrics such as "total minutes online" (denoting all online time) and "total paid minutes online" (denoting when customers are paying for a private stream or chats).

51. Pursuant to a common, uniform Agreement, ICF and/or ATG can record Plaintiff while he is performing and may use the recordings for marketing and advertisements.

52. Plaintiff receives no additional compensation for ICF's continued dissemination of his performances.

53. As detailed above, Defendants exerted substantial control over the most basic aspects of Plaintiff's work. For example, ICF directed Plaintiff on what equipment to use; directed Plaintiff as to what he could and could not do while performing; made decisions on whether content was "appropriate" or not; and prohibited Plaintiff from advertising his social media accounts or private websites.

54. The Performers' work was performed places of business, that is, the virtual meeting rooms and websites owned and operated by Defendants.

55. The work performed by Performers, providing adult entertainment, is the same business provided by and engaged in by Defendants.

56. The work performed by Performers is integral and indispensable to Defendants. Without the Performers, Streamate would not be in operation.

57. Performers do not have a specialized skill. In fact, the Streamate website purports, "You only need three pieces of equipment to get started: a webcam, a computer, and an internet connection. That's it! ***No technical skills required***."[8]

58. Defendants set the pay to Plaintiff and the putative Class members.[9]

59. Defendants misclassified Plaintiff and the Class members knowingly and willfully.

60. Defendants paid Plaintiff and putative Class members under a common compensation plan and policy where the Performers were paid for only a fraction of the time they spent working for ICF.

61. As a direct and proximate result of Defendants' common scheme of misclassification, Defendants failed to pay Plaintiff and Class members 100% of their tips and wages for all hours worked, including for straight time in the free chat and overtime where applicable.

## CLASS ACTION ALLEGATIONS

62. **Class Definition under the IWPCA**: This action is brought by Plaintiff as a class action pursuant to Fed. R. Civ. P. 23(b)(1), (2), (3) and/or Fed. R. Civ. P. 23(c)(4) on behalf of himself and the following, initially defined, "Tip Class":

> All current and former individuals who work or have worked as Performers for ICF Technology, Inc. and/or Accretive Technology Group, Inc. in the State of Illinois at any time ten (10) years prior to the filing of this Complaint through the entry of judgment in this Action and were not paid 100% of their tips.

---

[8] https://www.streamatemodels.com/ (last visited Oct. 27, 2026) (emphasis added).

[9] https://www.streamatemodels.com/#section-learnmore (last visited October 27, 2026) ("You'll get a set percentage of all the money spent on you.").

63. **Class Definition under the IMWL**: This action is brought by Plaintiff as a class action pursuant to Fed. R. Civ. P. 23(b)(1), (2), (3) and/or Fed. R. Civ. P. 23(c)(4) on behalf of himself and the following, initially defined, "Wage Class":

> All current and former individuals who work or have worked as Performers for ICF Technology, Inc. and/or Accretive Technology Group, Inc. in the State of Illinois at any time three (3) years prior to the filing of this Complaint through the entry of judgment in this Action and were not paid for all hours worked and/or overtime compensation for hours worked in excess of 40 hours per workweek.

64. The claims brought pursuant to Illinois law may be pursued by all similarly situated persons who do not opt-out of the Class Action pursuant to Rule 23.

65. **Numerosity** – Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, including discovery of Defendants' records, the Class is so numerous that the joinder of all members is impracticable. The Class is comprised of an easily ascertainable set of persons or entities who created webcam content for Defendants during the Class Period.

66. **Commonality & Predominance** – There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. Questions of law and fact are common to all Class members because, *inter alia*, this action concerns Defendants' common business policies, as described herein, these common questions of law and fact include, without limitation:

a. Whether Defendants engaged in the conduct as alleged herein;

b. Whether Defendants paid their Performers for all time worked online;

c. Whether Plaintiff and the Class members were misclassified as "independent contractors" when they were actually employees;

d. Whether Plaintiff and the Class members were deprived the protections of

employee status under the law; and

e. Whether Plaintiff and the Class members are entitled to damages, and the amount of such damages.

67. **Typicality** – Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, performed and created web cam content for ICF and/or ATG.

68. **Adequacy of Representation** – Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are experienced in wage and hour class-action litigation. Plaintiff has no interests which are adverse to, or in conflict with, other members of the Class.

69. **Superiority of Class Action** – A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, a class action presents far fewer management difficulties, conserves judicial as well as the parties' resources and protects the rights of each Class member.

70. Plaintiff and the Class members he seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policies, practices, and customs regarding Defendants' classification and pay practices.

**COUNT I**
**ILLINOIS WAGE PAYMENT AND COLLECTION ACT**
***(On Behalf of Plaintiff and the Tip Class)***

71. All previous paragraphs are incorporated as though fully set forth herein.

72. At all relevant times herein, Defendants have been an "employer" as defined in the IWCPA. 820 Ill. Comp. Stat. 115/2.

73. At all relevant times herein, Plaintiff and the putative Tip Class members were employed by Defendants as "employees" within the meaning of the IWCPA, 820 Ill. Comp. Stat. 115/2.

74. Defendants entered into agreements with Plaintiffs and members of the Tip Class in the form of Performer Agreements. 56 Ill. Admin. 300.450.

75. Section 4.1(a) of the Illinois Wage Payment and Collection Law states:

> Gratuities to employees are the property of the employees, and employers shall not keep gratuities. Failure to pay gratuities owed to an employee more than 13 days after the end of the pay period in which such gratuities were earned constitutes a violation of this Act.

76. Defendants retained portions of gratuities to Plaintiff and the Tip Class members and have not paid all of the gratuities within 13 days after the end of the pay period in which they were earned by the Performers. Accordingly, Defendants violated the IWCPA.

77. Plaintiff, on behalf of himself and the Tip Class members, has sustained damages in the form of lost tips as a proximate result of Defendants' violations, and are entitled to recover the amount of the retained tips, liquidated damages, attorneys' fees and costs, as well as pre-judgment and post-judgment interest.

WHEREFORE, Plaintiff Bennett, on behalf of himself and all other similarly situated individuals, known and unknown, respectfully request that this Court enter an order as follows:

a. Determining that this action may be maintained as a class action under Fed. R. Civ.

P. 23;

b. Appointing Plaintiff as Class Representative and his counsel as Class Counsel;

c. Awarding judgment in an amount equal to all unpaid tips to Plaintiff and all others similarly situated pursuant to the IWPCA;

d. Awarding prejudgment interest on the back pay in accordance with 815 Ill. Comp. Stat. 205/2;

e. Awarding statutory damages, including 5% for each month their wages remain unpaid, pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

f. Awarding reasonable attorneys' fees and costs pursuant to 820 Ill. Comp. Stat. 115/14(a);

g. Entering an injunction precluding Defendants from violating the IWPCA; and

h. Ordering such other and further relief as this Court deems appropriate and just.

**COUNT II**
**ILLINOIS MINIMUM WAGE LAW**
**MINIMUM WAGE VIOLATIONS**
***(On Behalf of Plaintiff and the Wage Class)***

78. All previous paragraphs are incorporated as though fully set forth herein.

79. This Count arises from Defendants' violations of the IMWL, 820 Ill. Comp. Stat. 105/1, et seq., for failing to pay Plaintiff and the putative members of the Wage Class compensation for all time worked, which includes unpaid straight time wages in the free chat and overtime compensation for all hours over forty (40) per workweek.

80. At all relevant times herein, Defendants have been an "employer" as defined in the IMWL. 820 Ill. Comp. Stat. 105/3(c).

81. At all times relevant herein, Plaintiff and putative members of the Wage Class were employed by Defendants as "employees" within the meaning of the IMWL, 820 Ill. Comp. Stat.

105/3(d).

82. Pursuant to the IMWL, for all weeks during which Plaintiff and the putative Wage Class worked in the free chat they were not paid any wage despite being entitled to be fully compensated for all hours worked.

83. Pursuant to the IMWL, for all weeks during which Plaintiff and the putative Wage Class worked in excess of forty (40) hours, they were entitled to be fully compensated at the proper overtime rate.

84. As a direct and proximate result of Defendants' violations of the IMWL, Plaintiff and the putative Wage Class have suffered damages in the form of unpaid wages, both straight time for unpaid wages in the free chat and for overtime where applicable.

WHEREFORE, Plaintiff Bennett, on behalf of himself and all other similarly situated individuals, known and unknown, respectfully request that this Court enter an order as follows:

a. Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23;

b. Appointing Plaintiff as Class Representative and his counsel as Class Counsel;

c. Awarding judgment in an amount equal to all unpaid back pay owed to Plaintiff and all others similarly situated pursuant to the IWWL;

d. Awarding prejudgment interest on the back pay in accordance with 815 Ill. Comp. Stat. 205/2;

e. Awarding statutory damages, including 5% for each month their wages remain unpaid, pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

f. Awarding reasonable attorneys' fees and costs pursuant to 820 Ill. Comp. Stat. 115/14(a);

g. Entering an injunction precluding Defendants from violating the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 et seq.;

h. Ordering such other and further relief as this Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Kyle Bennett, on behalf of himself and all others similarly situated, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: October 30, 2026

By: *<u>/s/ Alexis D. Martin</u>*
Alexis D. Martin (#6309619)

Alejandro Caffarelli (#6239078)
Alexis D. Martin (#6309619)
Caffarelli & Martin Ltd.
8 S. Michigan Ave., Ste. 1200
Chicago, Illinois 60603
(312) 763-6880
acaffarelli@caffarelli.com
amartin@caffarelli.com

Charles J. Kocher, Esq.*
Tyler J. Burrell, Esq. *
Gaetano J. DiPersia, Esq.*
McOMBER McOMBER & LUBER, P.C.
50 Lake Center Drive, Suite 400
Marlton, NJ 08053
(856) 985-9800
cjk@njlegal.com
tjb@njlegal.com
gjd@njlegal.com

*Attorneys for Class Representative Plaintiff Kyle Bennett, on behalf of himself and all others similarly situated*

**Pro hac vice application forthcoming*